## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**INTERNATIONAL OFFSHORE**               **CIVIL ACTION**
**SERVICES, LLC AND**
**INTERNATIONAL MARINE, LLC**

**VERSUS**                         **NO: 13-4852**

**LINEAR CONTROLS OPERATING,**      **SECTION: "S" (5)**
**INC. f/k/a LINEAR CONTROLS, INC.**
**AND APACHE CORPORATION (OF**
**DELAWARE)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Judgment on the Pleadings (Doc. #14) is **DENIED**.

### BACKGROUND

This matter is before the court on a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure filed by third-party defendant, Catlin Speciality Insurance Company. Catlin argues that it is entitled to judgment on the pleadings regarding the claims brought against it by defendant and third-party plaintiff, Apache Corporation (of Delaware), because Apache was not insured by the relevant policy at the time of the accident, and the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"), Louisiana Revised Statutes § 9:2780, precludes contractual indemnification in this case. Catlin also argues that the contractual indemnification agreement is void by the operation § 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq.

Plaintiffs, International Marine, L.L.C. and International Offshore Services, L.L.C. (collectively "International Marine"), were the owner and owner pro hac vice, respectively, of the M/V INTERNATIONAL HUNTER. On December 13, 2011, the M/V INTERNATIONAL

HUNTER allided with an unmanned production platform in West Cameron Block 168 in the Gulf of Mexico off the coast of Louisiana that was owned by Linder Oil Company, a Partnership; Linder Energy Company; Louisiana General Oil Company; Sojitz Energy Ventures, Inc.; Destin Resources LLC; and, Reserves Management, L.C.  The vessel's four crew members and three passengers boarded life boats and were rescued about an hour after the allision.  Jake Bergeron, an employee of defendant, Linear Controls Operating, Inc. f/k/a Linear Controls, Inc., was one of the passengers. Bergeron filed a claim for personal injuries in International Marine's limitation of liability action, In the Matter of International Marine, LLC and International Offshore Services, LLC, Civil Action No. 12-358, brought pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims in the United States District Court for the Eastern District of Louisiana.

Thereafter, International Marine filed this declaratory judgment action against Linear and Apache seeking a declaration that Linear and Apache, pursuant to the contracts among the parties, owe International Marine "defense and indemnity and the benefit of [their] insurance" with respect to Bergeron's claims.  International Marine alleges that in 2004, its predecessor in interest entered into a Master Time Charter Agreement ("MTCA") with Apache whereby International Marine agreed to provide vessels to Apache on request.  The MTCA, which is attached to International Marine's complaint, requires Apache to defend and indemnify International Marine against claims arising from personal injuries to Apache's employees or subcontractors:

> NEITHER OWNER, ITS OFFICERS, DIRECTORS, EMPLOYEES, THE VESSEL, HER OWNERS, OPERATORS, MASTERS, AND CREW, NOR THE UNDERWRITERS OF ANY OF THE FOREGOING SHALL HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY . . . INJURY, ILLNESS, DISEASE OR

DEATH OF EMPLOYEES OF CHARTERS, ITS SUBCONTRACTORS, OR THEIR EMPLOYEES OR AGENTS, AND CHARTERER SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS OWNER, ITS PARENT, SUBSIDIARY AND AFFILIATED COMPANIES . . . THE VESSEL, ITS OWNERS, OPERATORS, MASTER AND CREW, AND THE UNDERWRITERS OF EACH OF THE FOREGOING FROM AND AGAINST ANY SUCH CLAIM, WHETHER GROUNDLESS OR NOT, AND WHETHER CAUSED IN WHOLE OR IN PARTY BY THE NEGLIGENCE OR FAULT OF INDEMNITEES, OR BY UNSEAWORTHINESS OF THE VESSEL OR EQUIPMENT OF OWNER, OWNER'S PROPERTY OR OWNER'S SUBCONTRACTORS' PROPERTY. IT IS EXPRESSLY UNDERSTOOD THAT CHARTERER SHALL INSURE ITS OBLIGATIONS ASSUMED UNDER THIS PARAGRAPH.

International Marine also alleges that Linear and Apache had a Master Service Contract ("MSC"), whereby Linear agreed to provide services to Apache when Apache issued orders for specific work. The MSC, which is attached to International Marine's complaint, requires Linear to defend and indemnify Apache against claims arising from personal injuries to Linear's employees:

CONTRACTOR AGREES TO BE SOLELY RESPONSIBLE FOR AND ASSUME ALL LIABILITY FOR AND HEREBY AGREES TO DEFEND, RELEASE, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP[1] FROM ALL LOSSES, COSTS, EXPENSES, AND CAUSES OF ACTION (INCLUDING ATTORNEYS' FEES AND COURT COSTS FOR LOSS OR FOR DAMAGE TO PROPERTY, AND FOR INJURIES TO PERSONS AND DEATH ARISING OUT OF, INCIDENT TO, OR IN CONNECTION WITH, THE WORK OR ANY AND ALL OPERATIONS UNDER THIS CONTRACT . . . THE LIABILITY ASSUMED BY CONTRACTOR PURSUANT TO THIS SECTION 11(A) SHALL NOT BE LIMITED TO THE AMOUNTS OF CURRENT PROPERTY OR LIABILITY INSURANCE VOLUNTARILY CARRIED BY CONTRACTOR.

---

[1] International Marine is part of Apache's "Company Group" for the purposes of the MSC.

The MSC required Linear to maintain ceratin insurance policies, including comprehensive general liability insurance that covered the Gulf of Mexico, and to name Apache, its affiliates and subsidiaries as additional insureds.  The policies were to "be primary to and . . .  receive no contribution from any insurance policies maintained by Company Group."  The comprehensive general liability insurance was also required to cover "[c]ontracutal [l]iability, insuring the indemnity agreements contained in this contract."

In 2007, Apache and Linear amended the MSC by adding Exhibit E, which included provisions applicable to work performed in Louisiana or jurisdictions where Louisiana law would apply.  Exhibit E provided, in pertinent part:

> Notwithstanding any provision of this Contract to the contrary, Contractor and Company agree that with respect to Work performed within the State of Louisiana or within a jurisdiction to which the laws of the State of Louisiana are applicable, Company (on its own behalf and on behalf of Contractor Group) and Contractor (on its own behalf and on behalf of Contractor Group) may pay to each other's insurer the premium required by their respective insurers or their insurer's agents or authorized representatives to extend all of their insurance policies to include coverage for Company's and Contractor's respective indemnities as required by this Contract, and such insurance protection shall be governed by this Louisiana law. Each Party shall arrange to have the other Party billed for the premium by its respective insurer, and will advise such other Party prior to the inception of such billing if such premium will be in excess of $2,000. The insurance policy shall apply to incidents arising out of the performance of this Contract. At each subsequent renewal of insurance, during the term of this Contract, each Party will advise the other of the amounts of the premium required for the extensions described above and arrange billing for the appropriate premium by its insurers or their agents or authorized representatives. It is expressly acknowledged and agreed to by the Parties that the provisions of this paragraph are intended to comply with the provisions of *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5 th Cir. 1994), and the provisions hereof shall be interpreted in such a manner as to comply therewith.

4

Linear obtained the required commercial general liability insurance from Catlin for the relevant policy year.

Apache filed a third-party complaint against Catlin alleging that, if it owes defense and indemnity to International Marine, "Apache and/or [International Marine] are entitled to contractual defense and indemnity from Catlin."  Apache alleges that, on November 2, 2011, Linar's insurance brokers, Howard Risk Advisors/Landry Harris & Co., LLC ("Howard Risk"), sent Apache an invoice "in the amount of $2,625.00 for 'GL Marcel Exception Billing' covering the policy period from October 16, 2011 to October 16, 2012 with respect to Catlin's CGL Policy No. PKG-198308-1012 issued to Linear."  Apache claims that it paid the entire premium on January 3, 2012, and confirmed with Howard Risk via electronic mail dated February 16, 2012, that the effective dates of the coverage would be October 16, 2011 to October 16, 2012.  However, the policy change request sent from Howard Risk to Catlin states "effective 1/13/[12][2], please add [M]arcel endorsement in favor of Apache . . . at quoted premium of $2,500."  Apache seeks a declaration that, if the Court finds that it owns contractual defense and indemnity to International Marine, it "is entitled to *Marcel* coverage under the Policy and [its] indemnity obligation to [International Marine], if any, is covered by the Policy," or alternatively, that "the Policy is primary and covers [International Marine] directly as additional insureds for any exposure they may have in the Jake Bergeron claim."

After answering Apache's third-party complaint and incorporating the policy, policy change requests and MSC by reference, Catlin filed a motion for judgment on the pleadings pursuant to Rule

---

[2] The document states "1/13/21."  The "21" is clearly a typographical error inverting the "2" and "1" for 2012, because the policy period was October 16, 2011 to October 16, 2012.

12(c) of the Federal Rules of Civil Procedure.  Catlin argues that Apache's claims against it must be dismissed as a matter of law, because Apache was not insured by the relevant policy, and the LOAIA and LHWCA prohibit contractual indemnification in this case.

## ANALYSIS

### A.    Legal Standard

A party may move for judgment on the pleadings after an answer has been filed.  FED. R. CIV. P. 12(c).  "The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."  Chauvin v. State Farm & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007).  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965.  The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party."  In re S. Scrap Material Co., LLC, 541 F.3d 584, 587 (5th Cir. 2008). A district court may consider only the contents of the pleading and the attachments thereto. Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)).

**B.     Apache's Claim for Coverage Under the Catlin Policy**

Catlin contends that Apache does not have coverage under the policy because it was not added as an additional insured until January 13,2012, after the December 13, 2011, accident, and that coverage was not retroactive.

Apache filed a third-party complaint against Catlin alleging that, on November 2, 2011, it received an invoice in the amount of $2,625 for its coverage under the Catlin policy with effective dates of October 16, 2011 to October 16, 2012.  Apache alleges that it paid the entire amount on January 3, 2012, and confirmed with Howard Risk that the effective dates of the coverage would be October 16, 2011 to October 16, 2012.

Although the unambiguous terms of an insurance policy cannot ordinarily be altered, under Louisiana law, extrinsic evidence may be considered when a question of fact exists regarding the parties' intent in entering into the contract. See Gebreyesus v. F.C. Schaffer & Assoc., Inc., 204 F.3d 639, 643 (5th Cir. 2000).  As discussed below, the court must determine the applicable law in this case based on the current record.  However, if Louisiana law applies, Apache may be able to introduce evidence demonstrating that there was a mistake in the policy's stated effective dates. Thus, Catlin's motion for judgment on the pleadings is DENIED as to Apache's claim for coverage under the policy.

**C.      Application of the Louisiana Oilfield Anti-Indemnity Act**

Catlin argues that Louisiana law applies to this matter under the Outer Continental Shelf

Lands Act ("OCSLA"), 43 U.S.C. § 1331, et seq., and that, as a result, the LOIAI[3] precludes

Apache's claim for indemnity in this matter.

OCSLA's choice of law provision provides, in pertinent part:

> (1) The Constitution and laws and civil and political jurisdiction of
> the United States are extended to the subsoil and seabed of the outer
> Continental Shelf and to all artificial islands, and all installations and
> other devices permanently or temporarily attached to the seabed,
> which may be erected thereon for the purpose of exploring for,
> developing, or producing resources therefrom, or any such
> installation or other device (other than a ship or vessel) for the
> purpose of transporting such resources, to the same extent as if the
> outer Continental Shelf were an area of exclusive Federal jurisdiction
> located within a State . . .
>
> (2)(A) To the extent that they are applicable and not inconsistent with
> this subchapter or with other Federal laws and regulations of the
> Secretary now in effect or hereafter adopted, the civil and criminal
> laws of each adjacent State, now in effect or hereafter adopted,
> amended, or repealed are declared to be the law of the United States
> for that portion of the subsoil and seabed of the outer Continental
> Shelf, and artificial islands and fixed structures erected thereon,
> which would be within the area of the State if its boundaries were

---

[3] The LOAIA provides, in pertinent part:

> B. Any provision contained in, collateral to, or affecting an agreement
> pertaining to a well for oil, gas, or water, or drilling for minerals which
> occur in a solid, liquid, gaseous, or other state, is void and unenforceable to
> the extent that it purports to or does provide for defense or indemnity, or
> either, to the indemnitee against loss or liability for damages arising out of
> or resulting from death or bodily injury to persons, which is caused by or
> results from the sole or concurrent negligence or fault (strict liability) of the
> indemnitee, or an agent, employee, or an independent contractor who is
> directly responsible to the indemnitee.

La. Rev. Stat. § 9:2780(B).

extended seaward to the outer margin of the outer Continental Shelf
. . .

In Union Tex. Petroleum Corp. v. PLT Eng'g, Inc., 895 F.2d 1043 (5th Cir. 1990), the United States Court of Appeals for the Fifth Circuit set forth the requirements that must be met for state law to apply as surrogate federal law under OCSLA.  First, the controversy must arise on a situs covered by OCSLA, namely the seabed or subsoil of, or artificial strictures permanently or temporarily attached to the seabed or subsoil of the Outer Continental Shelf. Id. at 1047.  Second, "[f]ederal maritime law must not apply of its own force." Id.  Third, "[t]he state law must not be inconsistent with Federal law."[4] Id.

In a contract dispute, the first factor, an OCSLA situs of the controversy, depends on the focus of the contract. Ace Am. Ins. Co. v. M-I, L.L.C., 699 F.3d 826, 830 (5th Cir. 2012) (citing Grand Isle Shipyard, Inc. v. Seacor Marine, LLC, 589 F.3d 778, 784 (5th Cir. 2009) (en banc)).  "Under the focus-of-the-contract test, a contractual dispute 'arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses.'" Id. (quoting Grand Isle Shipyard, 589 F.3d at 787).  Further, in cases like the one at bar where there was a general long-term blanket agreement that does not call for the performance of specific work which is supplemented with work orders, the blanket contract and the specific work orders are interpreted together, and the court "should ordinary look to the location where the work is to be performed pursuant to the specific work order rather than the long-term blanket contract." Id. at 831 (quoting Grand Isle Shipyard, 589 F.3d at 787).

---

[4] The United States Court of Appeals for the Fifth Circuit has recognized in a similar case that Louisiana law is not inconsistent with federal law. See Ace Am. Ins. Co. v. M-I, L.L.C., 699 F.3d 826, 830 (5th Cir. 2012).  Thus, this factor will not be further discussed herein.

The second factor, whether maritime law applies of its own force, involves "an examination of the historical treatment of contracts of that type in the jurisprudence," and "a six-factor 'fact-specific' inquiry into the nature of the contract." Id. (citing Davis & Sons, Inc. v. Gulf Oil Corp., 919 F.2d 313, 316 (5th Cir. 1990)).  The six factors are:

> (1) What does the specific work order in effect at the time of the injury provide?
>
> (2) What work did the crew assigned under the work order actually do?
>
> (3) Was the crew assigned to work aboard a vessel in navigable waters?
>
> (4) To what extent did the work being done relate to the mission of that vessel?
>
> (5) What was the principal work of the injured worker?
>
> (6) What work was the injured work[er] doing at the time of the injury?

Id. at 831 n. 12 (citing Davis & Sons, 919 F.2d at 316).

Both the first and second elements of the test involve fact-intensive inquiries.  Although Catlin analyzes these factors and concludes that Louisiana law applies, it relies on "facts" stated in its answer.  These "facts" are not evidence sufficient to resolve the choice of law issue.  There has been no discovery in this matter. Thus, the court lacks evidence upon which to conduct the relevant test and determine the applicable law.  Without determining the relevant law, the court cannot

determine whether LOAIA applies to this matter.[5]  Therefore, Catlin's motion is DENIED as to Apache's claim for coverage under the insurance contract and as to the application of LOAIA.

## D.    Application of LHWCA

Catlin argues that the indemnity provision in the MSC is void under § 905(b) of the LHWCA, which permits a longshoreman injured by a vessel's negligence to bring a claim against the vessel as a third party under 33 U.S.C. § 933, and provides that any indemnity agreement, direct or indirect, between the longshoreman's employer and the vessel shall be void. 33 U.S.C. § 905(b). Catlin contends that the indemnity agreement in the MSC between Apache and Linear is void because it would indirectly benefit the "vessel" which it identifies as International Marine.

Apache, on the other hand, argues that § 905(c) applies. Section 905(c) provides that when a longshoreman, who qualifies as such by virtue of OCSLA, is injured by a vessel's negligence, he may bring an action against the vessel as a third-party under § 905(b), but "[n]othing contained in subsection (b) of this section shall preclude the enforcement according to its terms of any reciprocal indemnity provision whereby the [longshoreman's employer] and the vessel agree to defend and indemnify the other for cost of defense and loss or liability for damages arising out of or resulting from death or bodily injury to their employees." Id. at 905(c).  Catlin argues that § 905(c) is inappliable because there was no reciprocal indemnity agreement between Bergeron's employer, Linear, and the "vessel," which it identifies as International Marine.

_____

[5] Further, in Marcel v. Placid Oil Co., 11 F.3d 563 (5th Cir. 1994), the United States Court of Appeals for the Fifth Circuit recognized that LOAIA does not apply when the principal pays for its own liability coverage as an additional insured under the contractor's policy, as long as the contractor does not pay a material part of the cost.  It appears that Apache paid for its coverage under the Catlin policy.  However, there are factual inquiries regarding whether Linear paid a "material part of the cost" that cannot be determined at this stage of the litigation.

The LHWCA defines "vessel" as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, **charter** or bare boat charterer, master, officer or crew member." Id. at 902(21) (emphasis added).  As the vessel's charterer, Apache qualifies as the "vessel" under the LHWCA.  Kerr-McGee Corp. v. Ma-Ju Marine Serv. Inc., 830 F.2d 1332, 1338 (5th Cir. 1987) ("Although 'time-charterer' is not specifically mentioned in the definition, we have held that it is included").  Thus, § 905(c) applies, and Catlin's motion to dismiss Apache's claim for indemnity as void under § 905(b) is DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Judgment on the Pleadings (Doc. #14) is **DENIED**.


New Orleans, Louisiana, this  3rd   day of January, 2014.


**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

12