UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INTERNATIONAL OFFSHORE SERVICES, LLC AND INTERNATIONAL MARINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-4852** |
| **LINEAR CONTROLS OPERATING, INC. f/k/a LINEAR CONTROLS, INC. AND APACHE CORPORATION (OF DELAWARE)** | **SECTION: "S" (5)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. #27) is **DENIED**.

**IT IS FURTHER ORDERED** that Apache Corporation's Motion for Summary Judgment (Doc. #28) is **DENIED**.

## BACKGROUND

This matter is before the court on cross-motions for summary judgment filed by third-party plaintiff, Apache Corporation, and third-party defendant, Catlin Specialty Insurance Company. Apache argues that it is entitled to summary judgment finding that it had insurance coverage provided by Catlin at the time of the loss in question. Catlin, on the other hand, argues that it is entitled to summary judgment finding that Apache did not have such coverage.

Plaintiffs in this action, International Marine, L.L.C. and International Offshore Services, L.L.C. (collectively "International Marine"),[1] were the owner and owner pro hac vice, respectively, of the M/V INTERNATIONAL HUNTER. On December 13, 2011, the M/V INTERNATIONAL

---

[1] Plaintiffs settled all of their claims. Apache's third-party claim against Catlin for insurance coverage is the only claim remaining in this litigation.

HUNTER allided with an unmanned production platform in West Cameron Block 168 in the Gulf of Mexico off the coast of Louisiana that was owned by Linder Oil Company, a Partnership; Linder Energy Company; Louisiana General Oil Company; Sojitz Energy Ventures, Inc.; Destin Resources LLC; and, Reserves Management, L.C.  The vessel's four crew members and three passengers boarded life boats and were rescued about an hour after the allision.  Jake Bergeron, an employee of Linear Controls Operating, Inc. f/k/a Linear Controls, Inc., was one of the passengers.  Bergeron filed a claim for personal injuries in International Marine's limitation of liability action, In the Matter of International Marine, LLC and International Offshore Services, LLC, Civil Action No. 12-358, brought pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims in the United States District Court for the Eastern District of Louisiana.  International Marine settled with Bergeron.

 International Marine filed this declaratory judgment action against Linear and Apache seeking a declaration that Linear and Apache, pursuant to the contracts among the parties, owe International Marine "defense and indemnity and the benefit of [their] insurance" with respect to Bergeron's claims.  International Marine alleges that in 2004, its predecessor in interest entered into a Master Time Charter Agreement ("MTCA") with Apache whereby International Marine agreed to provide vessels to Apache on request.  The MTCA requires Apache to defend and indemnify International Marine against claims arising from personal injuries to Apache's employees or subcontractors.

 International Marine also alleges that Linear and Apache had a Master Service Contract ("MSC"), whereby Linear agreed to provide services to Apache when Apache issued orders for

specific work. The MSC requires Linear to defend and indemnify Apache against claims arising from personal injuries to Linear's employees. The MSC also required Linear to maintain ceratin insurance policies, including comprehensive general liability insurance that covered the Gulf of Mexico, and to name Apache, its affiliates and subsidiaries as additional insureds. The policies were to "be primary to and . . . receive no contribution from any insurance policies maintained by Company Group." The comprehensive general liability insurance was also required to cover "[c]ontracutal [l]iability, insuring the indemnity agreements contained in this contract."[2]

In 2007, Apache and Linear amended the MSC by adding Exhibit E, which included provisions applicable to work performed in Louisiana or jurisdictions where Louisiana law would apply. Exhibit E provided, in pertinent part:

> Notwithstanding any provision of this Contract to the contrary, Contractor and Company agree that with respect to Work performed within the State of Louisiana or within a jurisdiction to which the laws of the State of Louisiana are applicable, Company (on its own behalf and on behalf of Contractor Group) and Contractor (on its own behalf and on behalf of Contractor Group) may pay to each other's insurer the premium required by their respective insurers or their insurer's agents or authorized representatives to extend all of their

---

[2] All parties agree that the Louisiana law applies to this matter. The Louisiana Oilfield Anti-Indemnity Act ("LOAIA") provides, in pertinent part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. Rev. Stat. § 9:2780(B). However, in Marcel v. Placid Oil Co., 11 F.3d 563 (5 th Cir. 1994), the United States Court of Appeals for the Fifth Ciruicit held that the LOAIA is not violated when an oil company pays the premium directly to a contractor's insurer for additional coverage.

3

> insurance policies to include coverage for Company's and Contractor's respective indemnities as required by this Contract, and such insurance protection shall be governed by Louisiana law. Each Party shall arrange to have the other Party billed for the premium by its respective insurer, and will advise such other Party prior to the inception of such billing if such premium will be in excess of $2,000. The insurance policy shall apply to incidents arising out of the performance of this Contract. At each subsequent renewal of insurance, during the term of this Contract, each Party will advise the other of the amounts of the premium required for the extensions described above and arrange billing for the appropriate premium by its insurers or their agents or authorized representatives. It is expressly acknowledged and agreed to by the Parties that the provisions of this paragraph are intended to comply with the provisions of *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994), and the provisions hereof shall be interpreted in such a manner as to comply therewith.

Linear obtained the required commercial general liability insurance from Catlin for the relevant policy years, and Apache obtained Marcel coverage from Catlin under the terms of the MSC.

Apache filed a third-party complaint against Catlin alleging that, if it owes defense and indemnity to International Marine, "Apache and/or [International Marine] are entitled to contractual defense and indemnity from Catlin." Apache alleges that, on November 2, 2011, Linear's insurance brokers, Howard Risk Advisors/Landry Harris & Co., LLC ("Howard Risk"), sent Apache an invoice "in the amount of $2,625.00 for 'GL Marcel Exception Billing' covering the policy period from October 16, 2011 to October 16, 2012 with respect to Catlin's CGL Policy No. PKG-198308-1012 issued to Linear." Apache claims that it paid the entire premium on January 3, 2012, and confirmed with Howard Risk via electronic mail dated February 16, 2012, that the effective dates of the coverage would be October 16, 2011 to October 16, 2012. However, the policy change

request sent from Howard Risk to Catlin states "effective 1/13/[12][3], please add [M]arcel endorsement in favor of Apache . . . at quoted premium of $2,500." Apache seeks a declaration that it "is entitled to *Marcel* coverage under the Policy and [its] indemnity obligation to [International Marine], if any, is covered by the Policy," or alternatively, that "the Policy is primary and covers [International Marine] directly as additional insureds for any exposure they may have in the Jake Bergeron claim."

Apache and Catlin have filed cross-motions for summary judgment regarding whether Apache obtained Marcel coverage from Catlin that was effective on December 13, 2011.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only

---

[3] The document states "1/13/21." The "21" is clearly a typographical error inverting the "2" and "1" for 2012, because the policy period was October 16, 2011 to October 16, 2012.

point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Apache and Catlin's Cross-Motions for Summary Judgment**

Apache and Catlin's cross-motions for summary judgment address whether Apache had Marcel coverage provided by Catlin on December 13, 2011. Apache argues that the undisputed facts regarding the parties' course of dealings demonstrate that it had such coverage. Catlin, on the other hand, argues that the undisputed facts demonstrate that Apache had not paid the premium as of the date of the accident and attempted to bind coverage after it already knew about the accident.

Apache argues that it is entitled to coverage because it paid the insurance premium on January 3, 2012, and confirmed with Howard Risk via electronic mail dated February 16, 2012, that the effective dates of the coverage would be October 16, 2011 to October 16, 2012. Apache points out that Catlin accepted the premium that was quoted for the entire year of coverage, but is refusing to provide such coverage, and instead insists that the coverage period began on January 13, 2012, without prorating the premium. Apache also argues that its past course of dealings with Catlin regarding its Marcel coverage on Liner's policy establish a pattern of providing insurance for the entire policy year, even when the premium payment is made after the policy's effective date. Specifically, Apache explains that on November 10, 2012, Howard Risk billed Apache for the Marcel coverage from Catlin for the first time. The invoice was dated, and Apache paid the premium, after the effective date of the policy, but the coverage was confirmed to be effective for the entire 2010-2011 policy year. Thus, Apache argues that it assumed that the coverage would be effective for the entire 2011-2012 policy year when it paid the quoted premium although Catlin received the premium later. Howard Risk's representative, Judi Louviere, testified that she did not

believe that Apache was aware of Bergeron's December 2011 accident when it paid the premium in January 2012. Apache has also pointed out that it did not know about the extent of Bergeron's injuries or that he was employed by Linear until after it paid the Marcel premium to Catlin. Apache received the invoice for the 2012-2013 policy year on October 8, 2012, and paid it on November 6, 2012, but the policy was effective from October 16, 2012 to October 16, 2013. Therefore, Apache argues that its course of dealing with Catlin demonstrate that the Marcel coverage is effective for the entire policy year although the premiums are paid after that policy year commences.

Catlin argues that it is entitled to summary judgment on Apache's claim because there was no Marcel coverage in place on the date of Bergeron's accident due to the premium being paid after the accident. Catlin contends that Apache's records show that it was aware of Bergeron's accident on December 14, 2011, and could not attempt to bind coverage for that accident after the fact without informing Catlin. Further, on December 21, 2011, Robin Martin of Apache stated in an email that the Marcel premium needed to be paid as soon as possible because Apache may not have coverage in the event of an offshore incident or accident if the premium is not paid. Catlin also argues that there was no request for the Catlin to provide coverage to Apache retroactively once the premium was paid, and the agreement to bind coverage was for January 13, 2012 to October 16, 2012. The contemporaneous underwriting notes state that the $2,500 premium was not to be prorated and was charged for the period January 13, 2012 to October 16, 2012. Martin, at Apache, was informed that the coverage was being bound effective January 13, 2012, and did not ask for it to be made retroactive. Louviere of Howard Risk testified that she never would have asked Catlin to bind coverage retroactively when there was a known accident because it would be unethical.

Apache and Catlin's arguments clearly establish that there are disputed issues of fact regarding Apache's claim for <u>Marcel</u> coverage against Catlin. Apache has shown that, pursuant to its course of dealings, with Catlin it expected to have <u>Marcel</u> coverage for the entire policy year, although the premium was paid late. Further, Apache has established that Catlin accepted the premium quoted for the entire year, but now claims that it covered only January 13, 2012 to October 16, 2012. Also, Catlin argues that the insurance brokers did not request coverage to be bound for the entire year, and Apache may have known about the December 13, 2011, accident when it attempted to bind coverage. Because there are disputed issues of fact for which the an assessment of the credibility of the witnesses is crucial, neither party can prevail on its motion for summary judgment. Therefore, Apache's motion for summary judgment and Catlin's motion for summary judgment are both DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. #27) is **DENIED**.

**IT IS FURTHER ORDERED** that Apache Corporation's Motion for Summary Judgment (Doc. #28) is **DENIED**.

New Orleans, Louisiana, this  21st  day of August, 2014.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**