UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **INTERNATIONAL OFFSHORE SERVICES, LLC AND INTERNATIONAL MARINE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 13-4852** |
| **LINEAR CONTROLS OPERATING, INC. f/k/a LINEAR CONTROLS, INC. AND APACHE CORPORATION (OF DELAWARE)** | **SECTION: "S" (5)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. #90) is **GRANTED**, and Apache Corporation's claim against Catlin is **DISMISSED WITH PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by third-party defendant, Catlin Specialty Insurance Company. Catlin argues the terms of the insurance policy at issue preclude the coverage sought by third-party plaintiff, Apache Corporation. Specifically, Catlin argues that the policy does not provide coverage for Apache's contractual defense and indemnity obligations that Apache owes to plaintiffs, International Marine, L.L.C. and International Offshore Services, L.L.C.

International Marine, L.L.C. and International Offshore Services, L.L.C. (collectively "International Marine"),[1] were the owner and owner pro hac vice, respectively, of the M/V INTERNATIONAL HUNTER. On December 13, 2011, the M/V INTERNATIONAL HUNTER

---

[1] Plaintiffs settled all of their claims. Apache's third-party defense and indemnity claim against Catlin for insurance coverage is the only claim remaining in this litigation.

allided with an unmanned production platform in West Cameron Block 168 in the Gulf of Mexico off the coast of Louisiana that was owned by Linder Oil Company, a Partnership; Linder Energy Company; Louisiana General Oil Company; Sojitz Energy Ventures, Inc.; Destin Resources LLC; and, Reserves Management, L.C. The vessel's four crew members and three passengers boarded life boats and were rescued about an hour after the allision. Jake Bergeron, an employee of Controls Operating, Inc. f/k/a Linear Controls Operating, Inc. f/k/a Linear Controls, Inc. ("Linear"), was one of the passengers. Bergeron was en route to an Apache platform to perform work pursuant to a contract between Linear and Apache, and the vessel was time chartered by Apache. Bergeron filed a claim for personal injuries in International Marine's limitation of liability action, <u>In the Matter of International Marine, LLC and International Offshore Services, LLC</u>, Civil Action No. 12-358, brought pursuant to Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims in the United States District Court for the Eastern District of Louisiana. International Marine settled with Bergeron.

     International Marine filed this declaratory judgment action against Linear and Apache seeking a declaration that pursuant to the contracts among the parties, Linear and Apache owed International Marine "defense and indemnity and the benefit of [their] insurance" with respect to Bergeron's claims. In 2004, International Marine's predecessor in interest entered into a Master Time Charter Agreement ("MTCA") with Apache whereby International Marine agreed to provide vessels to Apache on request. The MTCA requires Apache to defend and indemnify International Marine against claims arising from personal injuries to Apache's employees or subcontractors. Specifically, the MTCA provides:

>NEITHER [INTERNATIONAL MARINE], ITS OFFICERS, DIRECTORS, EMPLOYEES, THE VESSEL, HER OWNERS, OPERATORS, MASTER, AND CREW, NOR THE UNDERWRITERS OF ANY OF THE FOREGOING SHALL HAVE ANY RESPONSIBILITY OR LIABILITY FOR ANY CLAIM . . . FOR ANY INJURY, ILLNESS, DISEASE OR DEATH OF EMPLOYEES OF [APACHE], ITS SUB-CONTRACTORS, OR THEIR EMPLOYEES OR AGENTS, AND [APACHE] SHALL DEFEND AND INDEMNIFY, AND HOLD HARMLESS [INTERNATIONAL MARINE], ITS PARENT, SUBSIDIARY AND AFFILIATED COMPANIES . . . THE VESSEL, ITS OWNERS, OPERATORS, MASTER, AND CREW, AND THE UNDERWRITERS OF EACH OF THE FOREGOING FROM AND AGAINST ANY SUCH CLAIM, WHETHER GROUNDLESS OR NOT, AND WHETHER CAUSED IN WHOLE OR IN PART BY THE NEGLIGENCE OR FAULTS OF INDEMNITEES, OR BY UNSEAWORTHINESS OF THE VESSEL . . . IT IS EXPRESSLY UNDERSTOOD THAT [APACHE] SHALL INSURE ITS OBLIGATIONS ASSUMED UNDER THIS PARAGRAPH.

The MTCA required Apache to obtain comprehensive general liability insurance, including contractual liability insurance, with limits of $5,000,000 per occurrence, and to name International Marine, "the vessel, its owners, operators, master, and crew, and their respective underwriters as Additional Assured and [to] Waive Subrogation against such Additional Assureds."

Linear and Apache had a Master Service Contract ("MSC"), whereby Linear agreed to provide services to Apache when Apache issued orders for specific work. The MSC requires Linear to defend and indemnify Apache against claims arising from personal injuries to Linear's employees. Specifically, the MSC provides:

>[LINEAR] AGREES TO BE SOLELY RESPONSIBLE FOR AND ASSUME ALL LIABILITY FOR AND HEREBY AGREES TO DEFEND RELEASE, INDEMNIFY, AND HOLD HARMLESS COMPANY GROUP[2], FROM ALL LOSSES, COSTS, EXPENSES,

---

[2] "Company Group" is defined as Apache "its parent, subsidiary and affiliated companies, and their officers, employees, in-house counsel, agents, representatives, invitees, co-lessees, co-owners, partners, joint venturers, contractors and subcontractors (other than [Linear]) and each of their respective successors, spouses, relatives, dependents, heirs and estates."

3

> AND CAUSES OF ACTION (INCLUDING ATTORNEYS' FEES AND COURT COSTS) FOR LOSS OR FOR DAMAGE TO PROPERTY, AND FOR INJURIES TO PERSONS AND DEATH ARISING OUT OF, INCIDENT TO, OR IN CONNECTION WITH, THE WORK OR ANY AND ALL OPERATIONS UNDER THIS CONTRACT, WHETHER OR NOT SUCH LOSSES, COSTS, EXPENSES, INJURIES, DEATH, OR CAUSES OF ACTION ARE CAUSED OR CONTRIBUTED TO BY THE NEGLIGENCE, OMISSION, STRICT LIABILITY, OR CONTRACTUAL LIABILITY, OR FAULT OF ANY MEMBER OF COMPANY GROUP AND WHETHER OR NOT CAUSED BY A PRE-EXISTING CONDITION.  THE LIABILITY ASSUMED BY [LINEAR] PURSUANT TO THIS SECTION . . . SHALL NOT BE LIMITED TO THE AMOUNTS OF CURRENT PROPERTY OR LIABILITY INSURANCE VOLUNTARILY CARRIED BY [LINEAR].

The MSC also required Linear to maintain comprehensive general liability insurance that provided at least $1,000,000 of coverage per occurrence, covered the Gulf of Mexico, and named Apache, its affiliates and subsidiaries as additional insureds "for obligations undertaken and liabilities assumed by [Linear] under" the MSC.  The policies were to "be primary to and . . . receive no contribution from any insurance policies maintained by Company Group."  The comprehensive general liability insurance was also required to cover "[c]ontracutal [l]iability, insuring the indemnity agreements contained in this contract."

In 2007, Apache and Linear amended the MSC by adding Exhibit E, which included provisions applicable to work performed in Louisiana or jurisdictions where Louisiana law would apply.  Exhibit E provided in pertinent part:

> Notwithstanding any provision of this Contract to the contrary, Contractor and Company agree that with respect to Work performed within the State of Louisiana or within a jurisdiction to which the laws of the State of Louisiana are applicable, Company (on its own behalf and on behalf of Contractor Group) and Contractor (on its own behalf and on behalf of Contractor Group) may pay to each other's insurer the premium required by their respective insurers or their

4

> insurer's agents or authorized representatives to extend all of their insurance policies to include coverage for Company's and Contractor's respective indemnities as required by this Contract, and such insurance protection shall be governed by Louisiana law. Each Party shall arrange to have the other Party billed for the premium by its respective insurer, and will advise such other Party prior to the inception of such billing if such premium will be in excess of $2,000. The insurance policy shall apply to incidents arising out of the performance of this Contract. At each subsequent renewal of insurance, during the term of this Contract, each Party will advise the other of the amounts of the premium required for the extensions described above and arrange billing for the appropriate premium by its insurers or their agents or authorized representatives. It is expressly acknowledged and agreed to by the Parties that the provisions of this paragraph are intended to comply with the provisions of *Marcel v. Placid Oil Co.*, 11 F.3d 563 (5th Cir. 1994), and the provisions hereof shall be interpreted in such a manner as to comply therewith.

Linear obtained the required commercial general liability insurance from Catlin for the relevant policy years, and Apache paid Catlin the premium required by Marcel to secure the indemnity coverage required by the MSC.

Apache filed a third-party complaint against Catlin alleging that, if it owes defense and indemnity to International Marine, "Apache and/or [International Marine] are entitled to contractual defense and indemnity from Catlin." Apache alleges that, on November 2, 2011, Linear's insurance brokers, Howard Risk Advisors/Landry Harris & Co., LLC ("Howard Risk"), sent Apache an invoice "in the amount of $2,625.00 for 'GL Marcel Exception Billing' covering the policy period from October 16, 2011 to October 16, 2012 with respect to Catlin's CGL Policy No. PKG-198308-1012 issued to Linear." Apache claims that it paid the entire premium on January 3, 2012, and confirmed with Howard Risk via electronic mail dated February 16, 2012, that the effective dates of the coverage would be October 16, 2011 to October 16, 2012. However, the policy change

request sent from Howard Risk to Catlin states "effective 1/13/[12][3], please add [M]arcel endorsement in favor of Apache . . . at quoted premium of $2,500." Apache seeks a declaration that it "is entitled to *Marcel* coverage under the Policy and [its] indemnity obligation to [International Marine], if any, is covered by the Policy," or alternatively, that "the Policy is primary and covers [International Marine] directly as additional insureds for any exposure they may have in the Jake Bergeron claim."

Apache and Catlin filed cross-motions for summary judgment regarding whether Apache obtained Marcel coverage from Catlin that was effective on December 13, 2011. This court denied those motions finding that disputed issues of material fact regarding the date of the procurement of the insurance precluded summary judgment.

On May 4, 2015, Catlin filed the instant motion for summary judgment arguing that the coverage Apache seeks under the policy, specifically coverage for Apache's contractual defense and indemnity obligations that it owes to International Marine under the MTCA, is precluded by the policy's terms. Apache argues that the coverage is not excluded, or the policy is ambiguous and should be interpreted in favor of finding coverage. Alternatively, Apache argues that International Marine is an additional insured under the blanket naming endorsement of the Catlin policy.

## ANALYSIS

**A.     Summary Judgment Standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to

---

[3] The document states "1/13/21." The "21" is clearly a typographical error inverting the "2" and "1" for 2012, because the policy period was October 16, 2011 to October 16, 2012.

judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); FED. R. CIV. PROC. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.     Insurance Policy Interpretation**

An insurance policy is a contract, and its interpretation is a question of law.  See Jarvis Christian Coll. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 197 F.3d 742, 746 (5th Cir. 2000). Under Louisiana law, insurance policies are construed by applying the general rules of contract interpretation set forth in the Louisiana Civil Code.[4] La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994).  The intent of the parties as reflected in the policy determines the extent of the coverage. Id. (citing La. Civ. Code art. 2045 (defining contractual interpretation as "the determination of the common intent of the parties"); Garcia v. St. Bernard Parish Sch. Bd., 576 So.2d 975, 976 (La. 1991)).  The words of an insurance policy are given their "general, ordinary, plain, and proper meaning . . . unless [they] have acquired a technical meaning." Id. (citing La. Civ.

---

[4] The parties agree that Louisiana law applies to the interpretation of the Catlin insurance policy.

7

Code art. 2047; Breland v. Schilling, 550 So.2d 609, 610 (La. 1989); Capital Bank & Trust Co. v. Equitable Life Assur. Soc'y of U.S., 542 So.2d 494, 497 (La. 1989)).

When the language is clear and unambiguous, it must be enforced as written. See Reynolds v. Select Props. Ltd., 634 So.2d 1180, 1183 (La.1994). "When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "'A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight.'" Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc., 180 F.3d 664, 668-69 (5th Cir. 1999) (quoting Tex. E. Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998)). If there is an ambiguity in the policy of insurance, the ambiguous provision is construed against the insurer because it is the party who furnished the text. La. Civ. Code art. 2056.

**C.     The Policy Language**

Catlin argues that Apache is an additional insured under the policy, not a Named Insured, and the terms of the policy exclude coverage for Apache's contractual indemnity obligation to International Marine covering Bergeron's bodily injury claim against International Marine. Specifically, Catlin argues that the policy includes coverage for bodily injuries for which the Named Insured is liable by the operation of an insured contract, but excludes such coverage for additional insureds.

The insurance policy at issue includes the following exclusion:

> **2.  Exclusions**
>
> This insurance does not apply to:

**b. Contractual Liability**

"Bodily injury"[5] . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" . . . occurs subsequent to the execution of the contract or agreement . . .

"Insured contract" is defined, in pertinent part, as:

That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The preamble to the insurance policy states that:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

"Linear Controls Inc" is the Named Insured on the Declarations page. The "SCHEDULE OF NAMED INSUREDS" adds "Linear Leasing, LLC" and "Linear Operating, Inc" as Named Insureds.

---

[5] "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

9

Apache is first mentioned in the policy in an endorsement titled "ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION." This endorsement modifies the commercial general liability coverage part of the insurance policy by amending "Section II - Who Is An Insured" "to include as an insured" "Apache Corporation & all Subsidiaries" "but only with respect to liability arising out of your ongoing operations performed for that insured."

These provisions, when read together, lead to the conclusion that Apache is an additional insured, not a Named Insured, under the policy. Apache is not included in the list of Named Insureds, and the endorsement adding Apache as an additional insured specifically states that it modifies "Section II  - Who Is An Insured," not the list of Named Insureds. Moreover, the phrase modifying Named Insureds, "any other person or organization qualifying as a Named Insured under this policy" is unambiguous. The Catlin policy specifies when another person or organization qualifies as a Named Insured. First, the policy includes a "SCHEDULE OF NAMED INSUREDS", which adds two entities as Named Insureds. Second, the policy provides in "SECTION II - WHO IS AN INSURED" that any organization newly acquired or formed by Linear, "other than a partnership, joint venture or limited liability company, and over which [Linear] maintain[s] ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization." Thus, the policy clearly defines when a party other than the one named on the Declarations page qualifies as a Named Insured under the policy, and the phrase "any other person or organization qualifying as a Named Insured under this policy" is unambiguous and does not include Apache.

Reading the term "you" to refer only to the Named Insureds, i.e. Linear Controls Inc, Linear Leasing, LLC and Linear Operating, Ins, and not additional insureds, such as Apache, is supported

10

by the decision of the United States Court of Appeals for the Fifth Circuit in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Liberty Mut. Ins. Co., 234 Fed. Appx. 190 (5th Cir. 2007). In that case, the court was interpreting an insurance policy with a definition of "you" that was identical to the one in Catlin's policy. The court stated that "you" was defined in the contract as "American Pipe," which was the Named Insured, and did not encompass additional insureds. Id.

Couch on Insurance explains that the terms "you" and "your" used throughout insurance policies "are typically defined as referring to the Named Insured shown in the declarations of the policy and any other person or organization qualifying as a Named Insured under the policy. Accordingly, 'you' and 'your' do not encompass individuals or entities added as additional insureds to the policy." 3 Couch on Insurance § 40:27 (3d ed. 2014). "This principle is consistent with the limited nature of the coverage provided to an additional insured, i.e., liability arising out of the Named Insured's work or operations." Id.

Couch on Insurance further explains that "[a]t the named insured's request, an insurance company may permit other individuals or entities to be added as an additional insured on the named insured's insurance policy[,]" which can be "accomplished pursuant to a specific endorsement expressly naming the individual or entity as an additional insured on the policy." Id. at § 40:26. The coverage provided to "an additional insured is typically limited to liability arising out of the named insured's work operations. Thus, additional insured status does not provide coverage to an additional insured for the additional insured's own work operations." Id.

The endorsement adding Apache to the Catlin policy as an insured provides precisely such coverage by making Apache and its subsidiaries insureds "only with respect to liability arising out of your [Linear's] ongoing operations performed for that insured [Apache]." Thus, Apache is an additional insured, not a Named Insured.

11

**D.     Apache's Arguments**

    **1.   Apache's Payment of an Insurance Premium to Catlin**

Apache contends that it should qualify as a Named Insured under the policy, and the policy should provide coverage for its defense and indemnity obligation to International Marine, because Apache paid a separate premium for its coverage pursuant to Marcel v. Placid Oil Co., 11 F.3d 563 (5th Cir. 1994). Apache argues that the purpose of the indemnity provisions in its contract with Linear was to ensure that Linear would be responsible for any injury to its own employees, and that by paying the Marcel premium it had a good faith belief that any claims involving Linear employees would be covered by the Catlin policy.

    LOIA provides, in pertinent part:

> B. Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an independent contractor who is directly responsible to the indemnitee.

La. Rev. Stat. § 9:2780(B). This statute was enacted to prevent "an inequity foisted on certain contractors and their employees by the defense and indemnity provisions . . . contained in some agreements pertaining to wells for oil, gas or water, or drilling for minerals . . . to the extent those provisions apply to death or bodily injury to persons." Id. at § 9:2780(A). The Louisiana Legislature intended "to declare null and void and against public policy of the state of Louisiana" any such provision. Id. Subsection G makes LOIA applicable to insurance coverage procured by the contractor:

12

>any provision in any agreement arising out of the operations, services or activities [covered by LOIA] which requires waivers of subrogation, additional named insured endorsements, or any other form of insurance protection which would frustrate or circumvent the prohibitions of [LOIA], shall be null and void and of no effect.

Id. at § 9:2780(G).

Applying Subsection G, "courts generally hold that contractual provisions requiring the contractor to extend its insurance coverage to cover the principal's acts of negligence or fault are void under the LOIA because these insurance arrangements frustrate the purpose of the Act." Rogers v. Samedan Oil Corp., 308 F.3d 477, 481 (5th Cir. 2002) (citations omitted). However, in Marcel, the United States Court of Appeals for the Fifth Circuit recognized an exception to this rule finding that, "when the principal pays the entire cost of its own insurance coverage by securing an endorsement naming it as an insured in the contract or policy, the purposes of the LOIA are not frustrated, and the insurance coverage is valid and enforceable." Id. (citing Marcel, 11 F.3d at 569-70).

Apache paid Catlin $2,625.00[6] to comply with the Marcel exception to the LOIA. The premium's purpose was to avoid the effects of the LOIA and permit Apache to be named as an additional insured on the policy in accordance with the MSC's requirement that Linear provide insurance for its defense and indemnity obligations to Apache, which included assuming liability for Apache's negligence or fault. Thus, the LOIA would not apply to void Linear's obligation to defend and indemnify Apache for any negligence on Apache's part that might have caused Bergeron's injuries, if those claims had been raised.

Apache is not seeking coverage under the Catlin policy for its tort liability to Bergeron. Rather, it is seeking coverage for its contractual liability to International Marine. Apache contends

---

[6] The court recognizes that there is a factual dispute regarding whether Apache's payment of the premium on January 3, 2012, provided retroactive coverage for Bergeron's claims regarding the December 13, 2011, accident.

that because Linear agreed to assume Apache's contractual liability to International Marine, that obligation is covered under the Catlin policy.

However, Linear's assumption of Apache's contractual liability to International Marine is not an "insured contract" under the Catlin policy. The policy excludes contractual liability assumed by an insured, and reinstates it for liability that is "[a]ssumed in a contract or agreement that is an 'insured contract'," which is defined as a contract or agreement pertaining to the Named Insured's business under which it assumes "the tort liability of another party to pay for 'bodily injury' . . . to a third person . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." The phrase "liability that would be imposed by law" does not include liability assumed by contract. 7A Couch on Insurance § 103:14 (3d ed. 2015). Therefore, Apache's contractual liability to International Marine, which was assumed by Linear, is not covered. See Colony Nat'l Ins. Co. v. Manitex, L.L.C., 461 Fed. Appx. 401 (5th Cir. 2012) (finding that the same definition of "insured contract" did not encompass liability arising strictly from a contract).

**2. Additional Insured Entitled to Same Coverage as Named Insureds**

Apache argues that, as an additional insured, it should be entitled to the same coverage as a Named Insured. Under Louisiana law, "additional insureds enjoy the same benefits and are subject to the same restrictions as a named insured absent policy language to the contrary." See Cal-Dive Int'l, Inc. v. Seabright Ins. Co., 627 F.3d 110, 114 (5th Cir. 2010) (citing Landerman v. Liberty Servs., Inc., 637 So.2d 809, 812-13 (La. Ct. App. 1994)). The Catlin policy specifically provides that contractual liability coverage is excluded for all insureds, except the Named Insureds. Therefore, the policy language provides different coverage and restrictions for the additional insured, and Apache is not entitled to the same "insured contract" benefit as the Named Insured.

### 3. Blanket Naming Endorsement

Apache argues that International Marine is an additional insured under the policy by operation of the blanket naming endorsement, and Apache is subrogated to International Marine's rights against Catlin, because Apache settled with International Marine.

The Catlin policy includes an endorsement titled "ADDITIONAL INSUREDS - OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION", which amends the policy to include as an insured "blanket as per written contract" "with respect to liability arising out of your ongoing operations performed for that insured." "A blanket additional insured endorsement generally provides coverage for any person or organization to whom or to which the named insured is obligated to name as an additional insured by virtue of a written contract or agreement." 3 Couch on Insurance § 40:30 (3d ed. 2014).

Apache argues that when it purchased Marcel coverage from Catlin, it became a Named Insured, and the blanket additional insured endorsement provided additional insured coverage to International Marine because of the MTCA. As discussed above, Apache was an additional insured under the policy, not a Named Insured. Further, the blanket additional insured endorsement applies to liability arising out of Linear's work performed for the party that would become an insured under the clause. Linear did not perform any work for International Marine. Therefore, the blanket additional insured endorsement did not provide additional insured coverage to International Marine. Thus, Catlin's motion for summary judgment is GRANTED.

## CONCLUSION

**IT IS HEREBY ORDERED** that Catlin Specialty Insurance Company's Motion for Summary Judgment (Doc. #90) is **GRANTED**, and Apache Corporation's claim against Catlin is **DISMISSED WITH PREJUDICE**.

15

New Orleans, Louisiana, this __12th__ day of August, 2015.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**